[No. 13982-4-III.   Division Three.   March 5, 1996.]

*In the Matter of the Estate of* MARIE S. EHLERS.

LORAINE BAHR, *Appellant*, v. VERA HARDUNG, *as Trustee, Respondent.*

752

*Jonathan G.K. Lee* and *Lee & Michaud*, for appellant.

*Michael R. Tabler* and *Schultheis & Tabler*, for respondent.

SCHULTHEIS, J. — Loraine Bahr filed a complaint for an accounting and moved for removal of the trustee of her father's testamentary trust. In a consolidated case, her three daughters, Denise Summers, Pamela Kenbok and Judy Flowers, moved to set aside the accounting and non-pro rata distribution of their grandmother's estate. The trial court dismissed the complaint, denied the motions and denied the requests for fees and costs. Loraine and her daughters appeal, contending the court erred in fail-

ing to (1) find breach of the trustee's fiduciary duty, (2) find breach of duty by the copersonal representatives of the grandmother's estate, and (3) award fees and costs for contesting the accounting. In particular, they contend the trustee and copersonal representatives were not authorized to make non-pro rata distributions of the undivided shared interests in real property held by the trust and the estate. They also contest the appraisal of the real property. We affirm.

William and Marie Ehlers, husband and wife, owned interests in several parcels of agricultural land in Lincoln and Douglas Counties. The couple had three children, Loraine, Kenneth Ehlers and Vera Hardung. In August 1987, William died. His daughter Vera served as the personal representative of his estate and the trustee of his testamentary trust (the Ehlers Trust). According to the terms of his will, most of William's undivided community property interest was to be transferred to Vera in trust, the income to Marie for life, and the remainder distributed equally to their three children upon Marie's death. Vera transferred her father's property interest to herself as trustee in November 1988 and administered the trust during her mother's life.

Marie died testate in February 1992. Marie's grandsons, Joseph Ehlers (son of Kenneth) and Kurt Hardung (son of Vera) are the copersonal representatives of her estate. They prepared an inventory of Marie's estate, including an appraisal of Marie's undivided community property interest in the Lincoln and Douglas Counties property. In determining the fair market value of the estate property, the appraiser discounted each parcel by 25 percent due to the nature of the undivided shared interests in each (one-half interest in Property A (Douglas County), six-eleventh interest in Property B (Douglas County) and one-sixth interest in Property C (Lincoln County)). During the probate of Marie's estate, Loraine disclaimed her interest so that her three daughters would take her one-third of the estate.

Soon after Marie's death, Loraine requested an accounting of the Ehlers Trust. When no accounting was forthcoming (after several requests), Loraine filed a complaint in October 1992 for an accounting, and requested that a third party replace Vera to distribute the trust assets. In May 1993, Loraine moved for an order to show cause regarding: (1) removal of Vera as trustee of the Ehlers Trust, (2) an accounting of the trust assets and transactions, and (3) further equitable relief. Vera finally submitted an accounting in June 1993—16 months after Marie's death—using the 25 percent discounted appraised value of Marie's undivided community property to establish the value of the Ehlers Trust property. Vera's son (Kurt), her husband, her lawyer and her accountant met with Loraine and her lawyer in September 1993 to discuss the trust accounting. Vera then revised and updated the accounting in November 1993 and filed it pursuant to RCW 11.106.030.[1]

Citing the "acrimonious relationship" between Loraine and her siblings, Vera decided to make a non-pro rata distribution of the trust real property. Prior to the hearing on Loraine's complaint, and over Loraine's objections, Vera transferred the trust interest in the real property to herself and Kenneth as tenants in common. She then offered Loraine the cash value of her one-third share, based on the discounted fair market value of the undivided fractional interest in the trust property. The copersonal representatives of Marie's estate also distributed the estate's undivided interests in real property assets to Vera and Kenneth as tenants in common, and distributed the discounted value of Loraine's share in the estate to her daughters. The net result of these distributions was that Vera and Kenneth obtained full ownership as tenants in common of Property A and one-third ownership as ten-

---

[1]RCW 11.106.030 authorizes the filing of a final account showing the period covered by the accounting; the total principal, receipts and disbursements; the total balance at the close; and the names and addresses of all beneficiaries.

ants in common of Property C.[2] Loraine and her daughters were offered cash representing one-third of the value of the trust and the estate.

Loraine's daughters filed a beneficiaries' motion in October 1993 for a hearing to determine the appropriateness of (1) the fees assessed to Marie's estate; (2) the inventory, valuation and accounting of the estate; and (3) the method of distribution of the estate. This action was consolidated with Loraine's complaint and motion and all were heard on December 17, 1993. In its findings and conclusions, the court dismissed the complaint and motions of Loraine and her daughters and specifically authorized Vera and the copersonal representatives of Marie's estate to distribute the trust and estate assets non-pro rata. Fees for services were awarded to the copersonal representatives but were denied to Vera due to her untimely delivery of the accounting. Motions for reconsideration filed by Loraine and her daughters were denied and they appeal.

Loraine and her daughters first contend that the court erred in concluding Vera and the copersonal representatives of Marie's estate satisfied their fiduciary duties. In particular, Loraine asserts the evidence shows that Vera failed to file proper accountings during her administration of the trust, did not seek a proper appraisal of the trust property after Marie's death, improperly valued the property, and made a non-pro rata distribution of the property over the other beneficiaries' objections. Her daughters contend the copersonal representatives of Marie's estate failed to prepare a proper inventory of the estate, improperly delegated their fiduciary duties, assigned a discounted value to the real property for death tax purposes when the death tax is not applicable here, and made a non-pro

---

[2]The additional fractional interests of Property B and another interest, each of very little value, were also included.

rata distribution of the property that benefited some heirs over others.

## THE EHLERS TRUST

■ All parties agree that a trustee is a fiduciary who owes the highest degree of good faith, diligence and undivided loyalty to the beneficiaries. *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 502, 844 P.2d 403 (1993); *Wilkins v. Lasater*, 46 Wn. App. 766, 774, 733 P.2d 221 (1987). A trustee's duties and powers are determined by the terms of the trust, by common law and by statute. *Wilkins*, 46 Wn. App. at 774; RCW 11.98. William's will set up the testamentary trust to provide income to his wife and to provide for her health and maintenance. Upon her death, he provided that the estate should be distributed to his three children "equally, share and share alike, as their sole and separate property." Vera was given considerable discretion to exercise her powers as trustee and was specifically authorized to sell the trust property for other investments that would benefit the trust.

RCW 11.98.070 provides broad powers to the trustee, including "discretionary power to acquire, invest, reinvest, exchange, sell, convey, control, divide, partition, and manage the trust property in accordance with the standards provided by law . . . ." The statute specifically authorizes 34 trustee actions, including allowing the trustee to

> [s]elect any part of the trust estate in satisfaction of any partition or distribution, in kind, in money or both; make nonpro rata distributions of property in kind; allocate particular assets or portions of them or undivided interests in them to any one or more of the beneficiaries without regard to the income tax basis of specific property allocated to any beneficiary and without any obligation to make an equitable adjustment[.]

RCW 11.98.070(15).

■ Loraine contends that Vera breached her fiduciary duties and failed to recognize the conflict of interests

involved in distributing property to herself over the objections of a beneficiary. She asserts that the court abused its discretion in failing to find a breach of duty here and in refusing to remove Vera as trustee.

Loraine first contends Vera breached her duties by refusing to make an annual accounting of the trust. A trustee is required by statute to make an annual itemized statement of receipts and disbursements of trust principal and income. RCW 11.106.020. Any beneficiary, including one who holds only a present interest in the remainder of a trust, is entitled to petition the court for an accounting. *Nelsen v. Griffiths*, 21 Wn. App. 489, 493, 585 P.2d 840 (1978). An accounting under RCW 11.106.020 is not one of right, however; the petition is directed to the court in the exercise of its discretion. *Nelsen*, 21 Wn. App. at 494 (regarding former RCW 30.30.040). Here, the trial court agreed that the accounting Vera eventually provided to Loraine was not timely under RCW 11.106.020, but found that it satisfied the requirements of RCW 11.106.030 and that its untimeliness did not cause loss to any beneficiary. Nevertheless, the court did not allow Vera to receive payment for her services as trustee,[3] "in order to compensate any perceived prejudice . . . ." *See In re Eisenberg*, 43 Wn. App. 761, 766, 719 P.2d 187 (1986). ("The trustee is liable for losses sustained by the trust which are the result of the trustee's breach.")

Loraine also contends Vera failed to properly appraise the trust assets, specifically the undivided fractional interests in real property.[4] Although Vera did not independently hire an appraiser to value the real property of

---

[3]The trial court "shall determine the correctness of the account and the validity and propriety of all actions of the trustee or trustees set forth in the account including the purchase, retention, and disposition of any of the property and funds of the trust, and shall render its decree either approving or disapproving the account or any part of it, and surcharging the trustee or trustees for all losses, if any, caused by negligent or wilful breaches of trust." RCW 11.106.070.

[4]Loraine cites RCW 11.106.020 for the proposition that a trustee must provide an appraisal of all trust property. This statute merely describes the annual itemized statement of receipts and disbursements required for each income

the Ehlers Trust, she relied on an appraisal ordered by the copersonal representatives of Marie's estate. Tom Walters, the appraiser, examined the estate property's potential to provide income and the market value of similar neighboring parcels to reach its base market value. He then discounted that value by 25 percent, which, in his opinion, was a reasonable discount for land subject to undivided fractional interests. Loraine and her daughters argued that the land should be valued as though the undivided interests did not exist. The trial court found that neither Loraine nor her daughters provided a basis for disputing the Walters appraisal of the estate property.

■ A trustee is entitled to rely on the recommendations of others hired to assist in the performance of the trustee's duties, as long as the trustee uses reasonable care in selecting such persons. RCW 11.98.070(27); *Allard v. Pacific Nat'l Bank*, 99 Wn.2d 394, 406, 663 P.2d 104 (1983). ("[A] trustee may determine the best possible price for trust property either by obtaining an independent appraisal of the property or by 'testing the market' to determine what a willing buyer would pay.") The record supports the trial court's finding that Mr. Walters is an experienced, independent real estate appraiser. His appraisal report is exhaustive, meticulous and examines several valuation strategies to find the most reasonable approach to determine the fair market value of these agricultural lands. Loraine's only evidence submitted in rebuttal is the affidavit of an experienced real property attorney who declares that it is general practice to discount the fair market value of undivided fractional interests only for death tax purposes, not for distribution of assets.

■ Before it was repealed by Laws of 1990, ch. 180, § 10,

---

trust beneficiary. Nothing concerning appraisals of trust property in the event of the distribution of assets is mentioned in the statute. Her reliance on RCW 11.108.030 is also misplaced. This statute provides that when a trust instrument authorizes the trustee to satisfy a pecuniary bequest by distribution of property other than money, the property must be valued at the fair market value on the date of distribution. Here, the Ehlers Trust does not specifically make a pecuniary bequest, so the statute does not apply.

former RCW 11.44.061 provided that the assets of an estate must be based on the valuations calculated for death tax purposes. Undivided fractional interests in property are commonly discounted for death tax purposes. *See, e.g., Estate of Haydel v. Commissioner*, 62 T.C.M. (CCH) 956 (1991), *aff'd*, 988 F.2d 1213 (5th Cir. 1993); *Estate of Dougherty v. Commissioner*, 59 T.C.M. (CCH) 772 (1990). After the repeal of RCW 11.44.061, the Legislature left us no guidance for valuing undivided interests in real property. We find, however, that discounting the value of undivided fractional interests is reasonable in light of the difficulty in finding a "willing buyer" for an undivided fractional interest in real property. *See Propstra v. United States*, 680 F.2d 1248, 1251 (9th Cir. 1982) (a federal estate tax case). As explained in *Propstra*, 680 F.2d at 1252:

> The use of an objective standard avoids the uncertainties that would otherwise be inherent if valuation methods attempted to account for the likelihood that estates, legatees, or heirs would sell their interests together with others who hold undivided interests in the property. Executors will not have to make delicate inquiries into the feelings, attitudes, and anticipated behavior of those holding undivided interests in the property in question.

Loraine contends a discounted value is not appropriate because each of the undivided one-half interests in the real property of the Ehlers Trust and Marie's estate went to Vera and Kenneth as tenants in common. The fact remains, however, that each property was valued at the time of death or distribution, when it was still an undivided one-half interest in the community property. Further, even when combined at the time of distribution, the estate and trust properties included other fractional interests and are now held as undivided one-half interests by Vera and Kenneth as tenants in common. All in all, the use of a discounted value is justified by the vagaries of the market.

■■ The most compelling argument advanced by Loraine is that Vera's distribution of property to herself

over the objections of another beneficiary proves a conflict of interest justifying her removal as trustee. A trustee who breaches his or her duties may be removed as trustee by petition of the beneficiary. RCW 11.98.039(3); *Waits v. Hamlin*, 55 Wn. App. 193, 198, 776 P.2d 1003, *review denied*, 113 Wn.2d 1025 (1989). The decision to remove a trustee, however, is within the discretion of the court, which will remove a trustee only for "reasonable cause." RCW 11.98.039(3); *Waits*, 55 Wn. App. at 198. Reasonable cause has been found in situations involving conflict of interest and bad will generated by litigation. *Waits*, 55 Wn. App. at 198-99. It is evident there was bad will between Loraine and the other beneficiaries of the trust, including Vera, trustee-beneficiary. The petitioning beneficiary must, however, demonstrate that removal is clearly necessary to save the trust property. *In re Estate of Cornett*, 102 Wash. 254, 264, 173 P. 44 (1918).

A trial court's decision in a trustee removal case will seldom be reversed absent a manifest abuse of discretion. *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 716, 732 P.2d 974 (1987). Here, the record supports the trial court's findings that the untimely accounting caused no harm to the beneficiaries, that the discounted market value of the undivided fractional property interests was reasonable, and that Vera's non-pro rata distribution of the property was authorized by statute and did not cause Loraine to suffer any damage. Accordingly, the court was justified in finding no breach of fiduciary duties that would be "reasonable cause" to remove Vera as trustee. RCW 11.98.039(3).

## MARIE'S ESTATE

Loraine's daughters contend the copersonal representatives of Marie's estate should be removed for breaching their fiduciary duties or that their distribution of the estate assets should be voided.

As with trustees, personal representatives owe a fidu-

ciary duty to the heirs of the estate and must conform to the laws governing trustees. *In re Estate of Vance*, 11 Wn. App. 375, 381, 522 P.2d 1172 (1974). RCW 11.68.070 provides that if a personal representative does not faithfully execute his or her trust, the court, in its discretion, may restrict the personal representative's powers or remove him or her and appoint a successor. In a nonintervention will, such as the one here, the personal representative is authorized to exercise any of the discretionary trustee powers found in RCW 11.98.070. RCW 11.68.090.

Loraine's daughters first assert the copersonal representatives of Marie's estate breached their duties by failing to assign values to certain personal property and by allowing Kenneth, an heir, to assign value to that property (arguing this was an improper delegation of their duties). This argument is without merit. Certain items of the estate, mostly junk vehicles and old farm equipment, were determined to have no value, were turned down by Kenneth, and were eventually offered to Loraine's daughters, who also turned them down. No evidence was submitted to show that this property had value.

Next, Loraine's daughters argue that the value of the estate's real property was improperly discounted. They contend a discounted value for undivided fractional interests is only relevant for death tax purposes, and the death tax was not assessed for this estate. The personal representative must make a true inventory of the property of the estate, including the assessed, fair net value of real property and all personal property. RCW 11.44.015, .066. In order to help ascertain the fair market value of any asset as of the date of the decedent's death, the personal representative may hire "a qualified and disinterested person . . . ." RCW 11.44.066; *Seattle-First Nat'l Bank v. Marshall*, 16 Wn. App. 503, 510, 557 P.2d 352 (1976), *review denied*, 89 Wn.2d 1007 (1977). As was discussed above, the court properly found that the appraisal was made by an experienced, independent real estate appraiser and that the appraisal was not successfully rebutted.

■ The final argument, that the copersonal representatives were not authorized by the will to make a non-pro rata distribution of the real estate, fails to take into account the discretionary powers granted to personal representatives absent the will's limits on those powers. RCW 11.68.020;[5] *In re Estate of Hookom*, 52 Wn. App. 800, 803, 764 P.2d 1001 (1988). Marie's will, similar to the Ehlers Trust, merely directs the copersonal representatives to distribute all the real and personal property "in equal shares to share and share alike." RCW 11.68.090 and RCW 11.98.070(15) authorize the personal representatives to make a non-pro rata distribution of property and to distribute in kind, in money or both.

■ Together, the court's findings are supported by substantial evidence and the findings support the conclusions of law. *Price v. Kitsap Transit*, 125 Wn.2d 456, 464, 886 P.2d 556 (1994). Further, we find that the court's exercise of discretion was reasonable in light of the powers granted to trustees and personal representatives under RCW 11.68.090 and RCW 11.98.070(15).

## ATTORNEY FEES

Finally, Loraine and her daughters challenge the trial court's denial of their requests for attorney fees and costs incurred in bringing these actions. They contend they are entitled to fees and costs expended in attempting to force Vera to make a trust accounting and in challenging the copersonal representatives' breaches of fiduciary duty.

■■ RCW 11.76.070 provides that the trial court, in its discretion, may award attorney fees and costs to a beneficiary who was "reasonably required to employ legal counsel to institute legal proceedings to compel an ac-

---

[5]RCW 11.68.020 provides that

"[u]nless court supervision of an estate shall be specifically required under the terms and provisions of a will, a decedent shall be deemed to have intended any and all personal representatives named in his will to have the power to administer his estate without the intervention of court . . . ."

counting" by a personal representative, or to resist an erroneous accounting. Loraine's daughters were not required to employ legal counsel to compel an accounting here; neither was the accounting nor distribution of the estate found to be erroneous. Accordingly, the court did not abuse its discretion in denying them legal fees under RCW 11.76.070. *See In re Estate of Mathwig*, 68 Wn. App. 472, 478, 843 P.2d 1112, *review denied*, 121 Wn.2d 1030 (1993). This statute does not apply to legal proceedings brought to compel a trust accounting.

■ Either the personal representative or the trustee may be required to pay fees and costs if the superior court or court of appeals finds, pursuant to RCW 11.96.140, that justice requires it. This award is left to the discretion of the court and will not be overturned absent a clear showing of abuse of discretion. *In re Estate of Niehenke*, 117 Wn.2d 631, 647, 818 P.2d 1324 (1991). Where the beneficiaries are unsuccessful in their litigation and primarily pursue their action for their own benefit, the court does not abuse its discretion in denying them attorney fees. *Niehenke*, 117 Wn.2d at 648; *In re Borris V. Korry Testamentary Marital Deduction Trust for Wife*, 56 Wn. App. 749, 756, 785 P.2d 484, *review denied*, 114 Wn.2d 1021 (1990). Loraine and her daughters were not successful in their litigation and if they had been successful they would have benefited only themselves; accordingly, the court did not abuse its discretion in denying them fees and costs for bringing their actions. We likewise decline to award them fees for pursuing this appeal.

Affirmed.

SWEENEY, C.J., and MUNSON, J., concur.